```
                    DISTRICT COURT OF THE VIRGIN ISLANDS
                    DIVISION OF ST. THOMAS AND ST. JOHN

DARYL BLYDEN,                        )
                                     )
            Plaintiff,                )
                                     )
        v.                            )       Civil No. 2015-30
                                     )
JULIUS WILSON, in his official       )
and individual capacity; DWAYNE      )
BENJAMIN, in his official and        )
individual capacity; KEITH           )
FRANCOIS, in his official and        )
individual capacity; BASIL           )
RICHARDS, in his official and        )
individual capacity; DIANE           )
PROSPER, in her official and         )
individual capacity; SHELLY          )
DEWESE, in her official and          )
individual capacity,                 )
                                     )
            Defendants.               )
                                     )
```

**ATTORNEYS:**

**Daryl Blyden**
St. Croix, U.S.V.I.
    *Pro se plaintiff.*

## ORDER

**GÓMEZ, J.**

Before the Court is the Report and Recommendation of the Magistrate Judge recommending that the Court dismiss, in part, the complaint of Daryl Blyden ("Blyden").

On April 13, 2015, Blyden filed a *pro se* complaint against Julius Wilson (who was the Director of the Virgin Islands Bureau of Corrections) and several other prison officials. Blyden alleges that he is a prisoner of the U.S. Virgin Islands. For the first 10 years of his confinement, Blyden was held in the Golden Grove Correctional Facility ("Golden Grove"), a Virgin Islands correctional facility located on St. Croix, Virgin Islands.

Blyden alleges that on April 14, 2013, he was transferred to the Red Onion State Prison, and later to the Wallens Ridge State Prison, two maximum security prisons located in Virginia. Blyden alleges that neither transfer was precipitated by notice or a hearing. Blyden further alleges that neither of the Virginia prisons offered vocational programs or provided him access to Virgin Islands legal materials.

Blyden asserts that (1) his due process rights were violated when he was transferred from Golden Grove to the Virginia prisons without notice or a hearing; (2) his due process rights were violated when he was transferred, without a hearing, to prisons that did not offer vocational programs; (3) his equal protection rights were violated when he was transferred between prisons without hearings; and (4) the Virginia prisons are denying him access to the courts.

On August 7, 2015, Blyden petitioned for leave to proceed *in forma pauperis*. On September 12, 2018, the Magistrate Judge issued an order granting Blyden leave to *proceed in forma pauperis*. The Magistrate also issued a Report and Recommendation recommending that the Court dismiss Blyden's complaint in part pursuant to the screening provisions in the Prison Litigation Reform Act.

With respect to Blyden's equal protection claim, the Magistrate noted that Blyden was required to "show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *See* ECF No. 30 at 14 (quoting *Huebschen v. Dep't of Health & Soc. Servs.*, 716 F.2d 1167, 1171 (7th Cir.1983)). Blyden "has not alleged, and cannot allege, that [Virgin Islands] prisoners are a constitutionally protected class." *Id.* Accordingly, the Magistrate recommended dismissal of that claim.

With respect to Blyden's claim that he was denied access to the courts, the Magistrate explained that, a valid claim for deprivation of access to the courts "must allege that (1) [the plaintiff] has a valid underlying claim challenging either the validity of his sentence on direct or collateral appeal or his conditions of confinement in a civil rights action, and (2) official action has frustrated [the plaintiff's] efforts to

litigate that claim." *See id.* at 15 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). The Magistrate found several deficiencies in Blyden's claim:

> First, plaintiff fails to allege facts to show that he has a valid underlying claim; he merely states that he "hired an attorney and they were working on the criminal case which landed plaintiff into prison." Second, he also fails to allege that he suffered an "actual injury" as a result of being transferred. To wit, although plaintiff claims that the lack of on-site access to Virgin Islands legal materials makes the law library at Wallens Ridge inadequate, he acknowledges that there is a process whereby he may obtain such materials. Furthermore, despite the fact that plaintiff contends that prior requests for such materials have not been successful, he fails to allege that defendants in any way impeded the process. Rather, he merely states, in general terms, that "at no time did the defendants insure and/or ascertain that upon the transfer of the plaintiff he would . . . be able to obtain legal materials regarding Virgin Islands laws" in a timely fashion.

*Id.* at 15-16 (citations omitted). Holding that Blyden "has not alleged sufficient facts regarding an official action that frustrated his efforts to litigate an attack on his conviction," the Magistrate recommended dismissing this claim. *See id.* at 16.

With respect to Blyden's Due Process claims, the Magistrate explained that, "[t]o state a claim for deprivation of procedural due process under the Fourteenth Amendment, a plaintiff must allege that (1) 'the state deprived him of a protected interest in life, liberty, or property'; and (2) 'the

deprivation occurred without due process of law.'" *See id.* at 5 (quoting *Bond v. Horne*, 553 Fed. App'x 219, 224 (3d Cir. 2014)). The Magistrate construed Blyden's "complaint as alleging the deprivation of two liberty interests: (1) the interest in avoiding transfer to a supermax facility, and (2) the interest in avoiding transfer to a facility that does not offer its inmates vocational programs." *See id.* at 6.

The Magistrate noted that, "In the prison context, whether there exists a liberty interest in avoiding transfer to a supermax facility is determined by focusing on the nature of the deprivation under the analysis set forth in *Sandin v. Conner*, 515 U.S. 472 (1995)." *Sandin* requires a deprivation that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See id.* (quoting Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997)). "[T]he only allegations [Blyden] makes in support of his claim that his transfer to Red Onion and Wallens Ridge implicated a protected liberty interest is that both prisons are classified as supermax facilities, and that he was unable to participate in vocational programs while at Wallens Ridge." *See id.* at 7-8. The Magistrate found that these conditions did not constitute "an atypical and significant hardship," and as such, Blyden's "allegations in that regard are insufficient." *See id.* at 8.

Blyden also alleged that 5 V.I.C. § 4503(c) "created a liberty interest in avoiding transfer to a facility that does not offer its inmates vocational programs." *See id.* at 8. As to this claim, the Magistrate held that Blyden had "sufficiently alleged the deprivation of a protected liberty interest," and because Blyden alleged "he was transferred without prior notice or a hearing," the Magistrate held "that he has sufficiently alleged that the deprivation occurred without due process of law." *See id.*

Upon a *de novo* review of the record, the Court agrees with the Magistrate's Report and Recommendation with respect to Blyden's equal protection and access to the courts claims. With respect Blyden's to Due Process claim, the Court agrees that Blyden has failed to allege a liberty interest in avoiding transfer to a maximum-security prison. The Court does not agree, however, that Blyden has alleged an interest in participating in vocational programs.

"To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." *Burns v. Pa. Dep't of Corr.,* 544 F.3d 279, 285 (3d Cir.2008). "Protected liberty or property interests generally arise either from the

Due Process Clause or from state-created statutory entitlement." *Shoats v. Horn*, 213 F.3d 140, 143-44 (3d Cir. 2000). It is well-established that "[p]risoners have no constitutional right to rehabilitation including educational opportunities and vocational training." *Wimbley v. Borg*, 972 F.2d 1348 (9th Cir. 1992) (citation omitted); *see also Rizzo v. Dawson*, 778 F.2d 527, 530-31 (9th Cir. 1985) ("If the plaintiff's due process claim hinges on a property interest in the vocational instruction course, his claim similarly lacks substance in law and fact because there is no constitutional right to rehabilitation."); *Zimmerman v. Tribble*, 226 F.3d 568, 571-72 (7th Cir. 2000) ("There is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that give rise to a violation of the Eighth Amendment."); *Chaney v. Richards*, 41 F.3d 663 (5th Cir. 1994) ("The state has no constitutional obligation to provide educational or vocational training to prisoners.").

Section 4503, title 5, of the Virgin Islands Code ("Section 4503") provides in relevant part:

> The Director of Corrections is authorized to enter into agreements to use the correctional or detention facilities of the United States Bureau of Prisons; or the correctional facilities of any state or local government or private correctional entity located in the United States, its territories, possessions, commonwealths or the District of Columbia, which are

>     accredited by the American Correctional Association,
>     when the Director of Corrections determines that
>     detention and/or correctional facilities within the
>     Virgin Islands are inadequate to serve the best
>     interest of the inmate or the general interest or
>     welfare of the Territory; provided that as a
>     condition of and prior to the transfer of any
>     inmates, the Director of Corrections shall ascertain
>     and insure the availability of educational and/or
>     vocational programs at the institution they are to
>     be transferred to for the purpose of enabling such
>     inmates to gain marketable skills, and provided
>     further that no inmate is to be transferred to any
>     institution lacking any such program(s).

5 V.I.C. § 4503(c).

For state-created liberty interests, precedent from the United States Supreme Court has made it "clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Under this standard, "state-created liberty interests are 'limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Powell v. Weiss*, 757 F.3d 338, 345-46 (3d Cir. 2014) (alterations omitted) (quoting *Sandin*, 515 U.S. at 484).

In *Shoats v. Horn*, 213 F.3d 140 (3d Cir. 2000), the Third Circuit held that a prisoner's conditions of confinement "imposed a significant hardship on him in relation to the ordinary incidents of prison life" where the prisoner (1) had "been in virtual isolation for almost eighty years"; (2) was "confined in his cell for 23 hours a day, five days a week, and 24 hours a day, two days a week"; (3) "[ate] meals by himself"; (4) only had "contact . . . with DOC officials"; (5) was "denied contact with his family"; (6) was "prohibited from participating in any educational, vocational, or other organizational activities"; and (7) was "prohibited from visiting the library." *Id.*, at 143-44. *Shoats* makes clear that a denial of vocational or educational opportunities may be a relevant factor in the Court's inquiry. By itself, the Court is not convinced that such a deprivation constitutes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484; *see also Toney v. Owens*, 779 F.3d 330, 342 (5th Cir. 2015) ("[The prisoner]'s exclusion from substance abuse treatment and educational/vocational programs while in prison does not implicate a liberty interest, as such restrictions do not impose atypical and significant hardships on [the prisoner] in relation to the ordinary incidents of prison life." (alterations and internal quotation marks omitted)).

With respect to property interests,

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it....
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972)); *see also Jago v. Van Curen*, 454 U.S. 14, 17-18 (1981) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."). "A protected property interest exists only when the state's discretion is 'clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met.'" *Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 900 (7th Cir. 2012) (quoting *Brown v. City of Michigan City, Ind.,* 462 F.3d 720, 729 (7th Cir.2006)).

Arguably, Section 4503(c) imposes a duty on the Director of Corrections to ensure that facilities holding Virgin Islands

prisoners have vocational or educational programs available. Section 4503 treats "educational and/or vocational programs" as a conjunctive and disjunctive condition. *See* 5 V.I.C. § 4503(c). That is, the Director of Corrections satisfies her obligation once she ensures the availability of *either* an educational *or* a vocational program. Significantly, Blyden does not allege that the Virginia prisons in which he was held offered no educational programs.

More importantly, Section 4503(c) only requires that vocational or education programs be generally "available" at facilities holding Virgin Islands prisoners. *See* 5 V.I.C. § 4503(c). A mandate merely creating or requiring the existence of a benefit does not give any particular individual "a legitimate claim of entitlement" to that benefit.[1] *See Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 735 (5th Cir. 2008) ("The mere existence of a governmental program or authority empowered to grant a particular type of benefit to one such as the plaintiff does not give the plaintiff a property right, protected by the due process clause, to receive the benefit,

---

[1] When the complaint of a prisoner proceeding *in forma pauperis* is dismissed for failure to state a claim, "the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Here, Blyden's complaint is not factually deficient but rather legally deficient. Under these circumstances, the Court finds that allowing Blyden to amend his complaint would be futile.

*Blyden v. Wilson, et al.*
Civil No. 2015-30
Order
Page 12

absent some legitimate claim of *entitlement*--arising from statute, regulation, contract, or the like--to the benefit." (internal quotation marks omitted)).

The premises considered, it is hereby

**ORDERED** that the Report and Recommendation docketed at ECF Number 30 is **ADOPTED** in part and **MODIFIED** in part; it is further

**ORDERED** that the complaint of Blyden is **DISMISSED**; it is further

**ORDERED** that all pending motions are **MOOT**; and it is further

**ORDERED** that the Clerk of Court shall **CLOSE** this case.


                                                S_____
                                                **CURTIS V. GÓMEZ**
                                                **District Judge**